CENTRALIA MINING CO., Defendant Below, Appellant,

v.

Deneen CRAWFORD, Plaintiff Below, Appellee,

and

Family Dollar Stores, Inc., a Delaware Corporation, and Family Dollar Stores of Delaware, Inc., a Delaware Corporation, Defendants Below, Appellees.

No. 543, 2010.

Supreme Court of Delaware.

Submitted: Jan. 26, 2011.

Decided: Feb. 14, 2011.

---

Kenneth M. Doss and Joshua H. Meyeroff, Esquires, of Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware; for Appellant.

Bayard J. Snyder, Esquire, of Snyder & Associates, P.A., Wilmington, Delaware; for Appellee Crawford.

Daniel P. Bennett, Esquire, of Mintzer Sarowitz, Zeris Ledva & Meyers, LLP, Wilmington, Delaware; for Appellees Family Dollar Stores, Inc. and Family Dollar Stores of Delaware, Inc.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice:

Defendant-below Crossroads Shopping Plaza, Inc. ("Crossroads"), f/k/a Centralia Mining Co.[1] appeals from a Superior Court order denying its motion to vacate a default judgment awarding $125,000 in damages to plaintiff-below Deneen Crawford ("Crawford"). On appeal, Crossroads claims that the trial court erred because

---

1. As explained in the facts, Crossroads was previously named "Centralia Mining Company," but changed its name to "Crossroads Shopping Plaza, Inc." in 1991.

Crawford acted unreasonably in attempting to serve her complaint on Crossroads, and that as a result, Crossroads' failure to respond to the complaint was due to excusable neglect. We find no error, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2005, while shopping at the Family Dollar store located in the Crossroads Shopping Plaza ("Shopping Center") in New Castle, Delaware, Crawford slipped and fell on a puddle of water that had accumulated on the shopping aisle floor. On December 5, 2007, Crawford sued Family Dollar and the Shopping Center's owner for damages caused by her injury. Crawford alleged that the Shopping Center's owner was negligent in constructing the Shopping Center's roof, in hiring a third-party to construct the roof, and/or in inspecting the roof. Family Dollar also asserted a cross-claim against the Shopping Center's owner for contribution.

To ascertain the identity of the Shopping Center's owner, Crawford conducted a title search at the New Castle County Recorder of Deeds. The title search revealed the record owner of the Shopping Center to be Centralia Mining Company ("Centralia"), a Pennsylvania corporation. The deed showed that Centralia had purchased the property in 1959.[2] Centralia later leased a portion of that property to Family Dollar. No subsequent deeds were recorded.

Despite having purchased commercial property and having engaged in commercial leasing activities, Centralia never registered to do business as a foreign corporation in Delaware, as 8 *Del. C.* § 371 required.[3] Consequently, when Crawford contacted the Delaware Secretary of State, she learned that Centralia had no appointed registered agent in Delaware for service of process. Moreover, when Centralia changed its name from "Centralia Mining Company" to "Crossroads Shopping Plaza, Inc." in 1991, it never made an appropriate filing with the Secretary of State disclosing that name change, as required by 8 *Del. C.* § 372.[4] Crawford, therefore, did not know, and had no way to discover, that Centralia was operating under a different name at the time of her accident.

Unaware of that name change, Crawford conducted a search with the Pennsylvania Department of State using the "Centralia Mining Company" name listed on the recorded deed. She found only a single listing for a "Centralia Mining" company. That listing showed that the "Centralia Mining" company had been created on May 30, 2001, that its principal place of business was Route 2044, RD 2 Box 665, Shamokin, Pennsylvania ("Shamokin address"), and that the owner's name was Michael J. Scopeluti.

In accordance with the Delaware long-arm statute, 10 *Del. C.* § 3104, Crawford served her complaint and summons on the Delaware Secretary of State on December 28, 2007.[5] Upon receiving the return of

---

**2.** The original deed had been recorded on March 2, 1959.

**3.** *See* 8 *Del. C.* § 371 (requiring foreign companies doing "any business in this State, through or by branch offices, agents or representatives located in this State," to register with the Secretary of State).

**4.** *See* 8 *Del. C.* § 372 (requiring foreign companies to register name changes with the Secretary of State).

**5.** *See* 10 *Del. C.* § 3104 (2007) (amended 2008). Under the old long-arm statute, the Delaware Secretary of State served as a nonresident defendant's agent for service of process. § 3104(d) (2007). A plaintiff would then

service, Crawford served Centralia by sending, via registered mail, a long-arm service letter, together with a copy of the complaint, to the Shamokin address shown on the records of the Pennsylvania Department of State.[6] The complaint was received, accepted, and signed for by a person named "Jon Scopelliti."

Crossroads never responded to Crawford's complaint, and on June 17, 2008, the Superior Court entered a default judgment against Centralia. Through mediation, Crawford settled her claim against Family Dollar for $25,000 on December 21, 2009.[7] On February 18, 2010, after holding an inquisition hearing, the Superior Court awarded Crawford $125,000 in damages against Centralia.

Three months later, on May 17, 2010, Crossroads registered with the Delaware Secretary of State as a foreign corporation. It then moved to vacate the default judgment under Superior Court Rule 60(b)(1), claiming that it had never received notice of Crawford's complaint, either from Crawford or from Family Dollar.[8] Therefore, Crossroads argued, because its failure to respond to Crawford's complaint was due to excusable neglect, relief should be granted.

The Superior Court conducted a hearing on July 27, 2010. Ruling from the bench, the trial judge denied Crossroads' motion to vacate the default judgment, holding that Crossroads should have registered its name change and updated its property title records to "put people on notice." The court also held that "no notice [was] given to [Crawford] in the cross-claim by Family

Dollar that there was a different landlord." Also troubling was the "missing gap" between Crossroads and "this other entity [named] Centralia Mining Company, which Crossroads says it has no relationship with [and denies that there is] any agreement between the two parties." Crossroads now appeals.

## ANALYSIS

On appeal, Crossroads claims that the Superior Court abused its discretion by denying its motion to vacate the default judgment on the basis of excusable neglect. The essence of Crossroads' argument is that Crawford acted unreasonably in serving the complaint, because she should have known that the "Centralia Mining" company listed on the Pennsylvania Department of State website could not have been the same company that was listed on the 1959 recorded deed. Crawford should have known that, Crossroads insists, because the website record listed the "Centralia Mining" company as a "fictitious entity" that had been created in 2001—nearly forty-two years after the 1959 deed was recorded. Therefore, Crossroads argues, Crawford's unreasonableness in sending the complaint to the wrong company is what caused Crossroads not to receive notice of, and its subsequent failure to respond to, the complaint.

We review a trial court's denial of a motion to vacate a default judgment under Rule 60(b)(1) for abuse of discre-

---

send a copy of the complaint to the nonresident defendant via registered mail. § 3104(d), (g) (2007).

6. *See* § 3104(g) (2007).

7. On October 14, 2010, the Superior Court granted Crawford's and Family Dollar's stipu-

lation of partial dismissal whereby Crawford settled all claims against Family Dollar.

8. DEL. SUPER. CT. CIV. R. 60(b) (granting relief from judgments); *see also* DEL. SUPER. CT. CIV. R. 55 (entry of default judgments).

tion.[9]  In determining whether a default judgment should be set aside, the trial court must consider three factors:  (1) whether the defendant's culpable conduct led to the default, and if so, whether that conduct was excusable, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced by vacating the judgment.[10]  The first factor is a threshold, such that the trial court need consider the second and third factors only "if a satisfactory explanation has been established for failing to answer the complaint, *e.g.*, excusable neglect or inadvertence."[11]

■  The Superior Court did not abuse its discretion in denying Crossroads' motion, because Crossroads' neglect was not "excusable."  It is undisputed that Crossroads failed to comply with the statutory registration requirements of Sections 371 and 372 for foreign corporations conducting business in Delaware.[12]  The long-recognized purpose of those statutory provisions "is to secure to the State and its people a way to serve process on a corporation which is organized elsewhere and which comes here to act through officers or agents."[13]  Delaware law mandates that "foreign corporations maintain agencies upon whom process can be served validly."[14]

Crossroads' failure to comply with the registration requirements—not any lack of diligence by Crawford—is what caused Crossroads to not receive notice of Craw-

ford's complaint.  Had Crossroads properly registered with the Delaware Secretary of State, the Secretary would have been able to provide Crawford the correct name and address on which to serve her complaint.  Because Crossroads failed to do that, Crawford was forced to investigate on her own.  There is no evidence that Crawford's search was unreasonable.  First, she searched the title to the property and found Centralia's name on the deed.  She then inquired of the Delaware Secretary of State, and learned that that office had no information about Centralia.  Aware that Centralia was a Pennsylvania corporation, Crawford then searched the Pennsylvania Department of State registry for Centralia's contact information.  Finding only one entry that matched Centralia's name, Crawford used that contact information to serve her complaint.  Service of that complaint was accepted.

Crossroads attempts to discredit Crawford's efforts by arguing that she "should have suspected that service on a fictitious entity was insufficient."  That argument is not persuasive.  First, the Pennsylvania Department of State listing nowhere expressly disclosed that the "Centralia Mining" company was a "fictitious entity."  The listing stated that the business entity's name was "Centralia Mining" and included a subsection entitled "Fictitious Names–Domestic–Information" where it listed the entity's principal place of business.[15]  A "fictitious name," however, merely indicates that one is "doing business as" an-

**9.**  *Stevenson v. Swiggett,* 8 A.3d 1200, 1204 (Del.2010).

**10.**  *Id.* at 1204–05.

**11.**  *Apartment Cmtys. Corp. v. Martinelli,* 859 A.2d 67, 72 (Del.2004); *see also Stevenson,* 8 A.3d at 1205.

**12.**  *See* 8 *Del. C.* §§ 371, 372.

**13.**  *Farmers Bank v. Sinwellan Corp.,* 367 A.2d 180, 183 (Del.1976).

**14.**  *Model Heating Co. v. Magarity,* 81 A. 394, 396 (Del.1911).

**15.**  The Pennsylvania Department of State's registry listing for "Centralia Mining" can be seen at https://www.corporations.state.pa.us./corp/soskb/Corp.asp?1909949 (last visited Feb. 4, 2011).

other name.[16] It does not carry with it the implication that the entity itself is not a real company, *i.e.*, a sham.

Second, and more important, Crawford had no knowledge, or any way to find out, that Centralia had changed its name to "Crossroads Shopping Plaza, Inc." The reason is because Crossroads failed to properly register as a foreign corporation and inform the Delaware Secretary of State of its 1991 name change in a legally proper way. And, when Crawford effected long-arm service at the Shamokin, Pennsylvania address, service was received and accepted. At no point was Crawford ever contacted by the recipient and told that she had served the wrong company. Nor was she ever put on notice when Family Dollar filed its cross-claim for contribution, because that cross-claim was asserted against Centralia (and not Crossroads, Centralia's new name).

˙ On these facts, Crawford's efforts to serve Crossroads were manifestly reasonable. Crossroads' own failure to comply with statutory requirements—not any omission by Crawford—is what caused Crossroads not to receive the complaint and its subsequent failure to respond. The Superior Court did not abuse its discretion in denying Crossroads' motion to vacate the default judgment, because Crossroads failed to establish any excusable neglect.

## CONCLUSION

For the above reasons, the judgment of the Superior Court is affirmed.

---

16. *See, e.g.*, U.S. Small Bus. Admin., *Register Your Fictitious or "Doing Business As" (DBA) Name*, http://www.sba.gov/content/register-your-fictitious-or-doing-business-dba-name (last visited Feb. 4, 2011).